## Beaver, Bare & Co. *versus* Bare.

1. The relinquishment by a father to his minor son of his right to the son's earnings may be implied from circumstances.

2. The minor son of one of the partners in a manufacturing firm was received in the firm's employ as an apprentice, and remained until after said firm became insolvent and made a general assignment for creditors. The son, after arriving of age, brought assumpsit against the members of the firm (with notice to the assignee) to recover wages earned by him prior to the assignment. No express emancipation of the plaintiff during his minority was shown, but the facts appeared in evidence, that the father had said to him when he entered the firm's service that " he was to get the same wages as the other apprentices;" a separate wages account was kept by the firm in the son's name; said wages were not credited to or claimed by the father; on at least one occasion the minor drew a small sum on account of his wages; and the minor received from the assignee his wages earned after the assignment:
*Held,* that said evidence should have been submitted to the jury upon the question whether the father had, prior to the assignment for creditors, emancipated the plaintiff, or relinquished to him his right to the plaintiff's wages, earned while a minor.

3. In the above case the father executed to the son, just before suit brought, a release under seal of any right he might have to said wages: *Held,* that said release was of no avail, as unless the father had released to the son said right prior to the general assignment for creditors, the same passed thereby to the assignee for the benefit of creditors.

4. The character of a parent's right to the custody, services and wages of a minor child, and the doctrine of emancipation, commented upon and explained.

May 31st 1883.  Before GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.  MERCUR, C. J., and PAXSON, J., absent.

ERROR to the Court of Common Pleas of *Franklin county:* Of May Term 1883, No. 34.

Assumpsit, brought November 3d 1882, by Samuel J. Bare against Jacob Beaver, John Bare, and D. F. Beaver, trading as Beaver, Bare & Co., with notice to S. B. Rinehart, assignee of Beaver, Bare & Co.  The narr. contained the common counts and a special count for wages for labor performed by plaintiff for said firm, amounting to $381.43, beginning February, 1878, and ending November 14th 1879, with interest on monthly instalments as due.  Pleas, non-assumpsit, payment with leave, &c.

On the trial, before ROWE, P. J., the following facts appeared : The firm of Beaver, Bare & Co., were manufacturers of agricultural implements, who employed, among other workmen, minors as apprentices in their shops, paying them wages at the rate of seventy-five cents a day the first year, eighty-five cents the second year, and ninety-five cents the third year.  In February, 1878, the plaintiff, Samuel J. Bare, a son of John Bare, who was a member of said firm, then a minor nineteen years of age living in his father's family, was received by said firm as an apprentice in the shops.  He testified that his father told him " he was to get the same as other shop apprentices, seventy-five cents, eighty-five cents, and ninety-five cents ;" that he had no conversation with the other members of the firm on the subject ; that an account was kept, on the firm's books, in his name, wherein he was credited with wages at seventy-five cents a day the first year, and eighty-five cents the second year ; that he did not draw said wages, except on one occasion the sum of $3 ; and that his father never forbid his drawing his wages.  It also appeared that his father never made any claim to said wages himself, and was not credited with them on the books.

On November 17th 1879, the said firm made a general assignment for the benefit of its creditors to S. B. Rinehart, who continued the business for a time.  The plaintiff continued to work for the assignee, being still a minor, and after his arrival of age, March 24th 1881, received from Rinehart the wages due him for such employment since the date of the assignment.

On October 30th 1882, John Bare executed to the plaintiff a release under seal, whereby he did " remise, release and quitclaim unto my said son, Samuel J. Bare, all right, title and interest which I have or may now have to the wages due from Beaver, Bare & Co., for the labor and services of my said son while in their employ, during his minority."  The plaintiff thereupon brought this suit.

The defendants presented the following points :

1. The wages sued for in this case having 'been earned by the plaintiff during his minority, and there being no evidence of emancipation of the son by the father, the law gives the exclusive right of recovery therefor to the father, and this action cannot be maintained.     Refused.

2. The father being a member of the firm of Beaver, Bare & Co., the real defendants, the assignment by him of his right to these wages to the son himself, after the latter attained his majority, gives to the son no other right of action than the father himself had with respect thereto.     And the partnership being insolvent and its estate still in the hands of an assignee for settlement, this action of assumpsit will not lie for the recovery of these wages at the suit of either father or son, therefore, the verdict must be for defendants.     Refused.

3. The father at most could only have maintained an action of assumpsit against his co-partners individually, and not against the firm, and the son having no other right of action than the father, the suit against the assignee of the partnership cannot be maintained.     Refused.

The court charged the jury, inter alia, as follows :—

" And, first, it is said the plaintiff ought to be entitled to recover because he was emancipated from the control of his father and allowed to receive his own wages.     I do not·so think.     No evidence of that sort was offered so far as his wages were concerned, that he was allowed to receive his wages himself.     I saw no evidence at all of that in this case.     The wages therefore at the time they were earned were by law due to the father.

" It appears, however, that on October 30th 1882, some four days before this suit was brought, the father made a release or an assignment in favor of the plaintiff, whereby he relinquished to him the right to the wages for which he now sues, and authorized him to receive the same.     The father is a member of the firm, defendant, and it is contended on the part of the defendants that he could not do this inasmuch as the firm is shown to be insolvent.     But the plaintiff contends inasmuch as the son, though a minor, performed the work, and that the father released to him his right to receive the money, that the father was not bound to assert his right to recover this money for the benefit of any one, and that he had in fact, on October 30th, relinquished his right to recover· the wages in favor of the plaintiff.

" Such being the case, I am of opinion that the plaintiff is entitled to recover on the ground that the father, John Bare, had the right to execute a paper releasing and ·relinquishing his right to recover the wages in favor of his son, and thereby

[Beaver v. Barc.]

the son was put in a position whereby he might sue the firm, defendant in his own name.

"Your verdict, therefore, as there is no fact in dispute, but only a question of law for the court, should be for the plaintiff for the same amount that is claimed."

Verdict, accordingly, for the plaintiff for $437.93, and judgment thereon. The defendants took this writ of error, assigning for error the refusal of their points as above.

*John Stewart* (*F. M. Kimmell* with him), for the plaintiff in error.—While a father may emancipate his minor son so that wages earned by the latter will belong to the son, yet until this is actually done the father has the exclusive right to the son's services, and can recover his wages at law. In this case there was but the faintest pretence that the father had freed the plaintiff; indeed, the evidence clearly showed that the contract had been made by the father, and that the son simply obeyed the latter's directions. But the court held that the assignment by the father to the son was sufficient to entitle the son to maintain the present action. Not that it was to be regarded as evidence of manumission affecting the terms of this contract, but as a good and valid assignment of a claim for which the father himself might have brought his action at any time against the partnership. In this we contend there was error. At the date of the general assignment for creditors the right to the son's wages was vested in the father, or in the firm as a contribution by the father, and passed under that assignment, hence there was nothing for the subsequent release to the son to operate upon : Kauffelt *v.* Moderwell, 9 Harris 224 ; Story on Part. § 390 ; McFadden *v.* Hunt, 5 W. & S. 471 ; Baily *v.* Brownfield, 20 Pa. St. 41 ; Brown *v.* McFarland, 41 Pa. St. 129. The father in this case could only recover his son's wages from his copartners after payment in full of all the firm creditors, and upon a final settlement of the partnership accounts, and the plaintiff's rights, under the release, can rise no higher.

*J. McD. Sharpe* and *Joseph Douglas*, for the defendants in error.—There was sufficient evidence to submit to the jury of the son's emancipation by the father, or, at least, of the father's waiver, in favor of his son, of his right to the son's wages, at the time the latter went into the defendant's service : Rush *v.* Vought, 55 Pa. St. 437 ; Brown's Appeal, 5 Norris 524 ; Galbraith *v.* Black, 4 S. & R. 207 ; United States *v.* Mertz, 2 Watts 406 ; Holdship *v.* Patterson, 7 Watts 547 ; McCloskey *v.* Cyphert, 3 Casey 220 ; Torrens *v.* Campbell, 24 P. F. S. 470 ; Glikeson *v.* Gilkeson, 1 Phil. Rep. 194 ; Whiting *v.* Earle, 3

Pickering 201, Amer. Decisions, vol. 15, p. 207;. Corey *v,* Corey, 19 Pick. 29, Amer. Decis. vol. 31, p. 117; Nixon *v.* Spencer, 16 Iowa 214; Dierker *v.* Hess, 54 Mo. 246. The claim being for wages of manual labor is preferred by the policy of the law and the statutes of 1849, 1872, and 1876. The release was valid.

Mr. Justice CLARK delivered the opinion of the court, .October 2d 1883..

The exercise of parental authority is not necessarily for the profit of the parent, but for the advantage of the child ; the duty of service by the child, being deemed necessary to the proper exercise of parental authority, for its own good. Although we still recognize the right of the father to the personal services of his children, that right is simply incidental to the duty of the father to discipline and direct them ; his right to personal custody and personal service are secured to him, therefore, in order that through them, prompted by natural affection, he may successfully impart to them habits of industry, methods of thrift and the means of personal success in life. Children are therefore not the mere servants of the father, nor is he bound to work them, as such, for the benefit of his creditors : McCloskey *v.* Cyphert, 3 Casey 220 ; he may let them go free from his service, whenever he chooses, no matter whether he be solvent or insolvent: Holdship *v.* Patterson, 7 Watts 547 ; Brown's Appeal, 5 Norris 524. The right to their service, being merely for their good, whenever the father finds their interest, or his own, better subserved by their emancipation, he can liberate them. This emancipation may be as perfect when they live together, under the same roof, as if they were separated ; for although the father thus relinquishes his right to their services, as a means of discipline, the duty of discipline still remains, and this duty can be better exercised in the family than elsewhere : McCloskey *v.* Cyphert, supra ; Rush *v.* Vought, 5 P. F. S. 437.

In Brown's Appeal, 5 Norris 524, this principle was fully recognized, and.it was there held, that the services of a son, rendered during minority, under a contract previously made with his father, was a valid consideration for a judgment confessed, as similar services rendered under a contract made afterwards, and that both, or either, were sufficient to sustain the judgment even as against creditors. Thus then it appears, that a father may not only relinquish his right to the wages of his minor son's labor, but he may, even as against his creditors, bind himself to pay his son for such services, pursuant to a contract previously made. If, however, the contract had not been made previous to the service, neither could the son recover for

his labor, nor would a voluntary judgment, given by an insolvent man, on such a consideration be of any validity as against creditors: Hack *v.* Stewart, 8 Barr 213.

Therefore, we infer, that whilst the right of a father to the actual custody and services of his minor children, is not, as such, an absolute or vested right, yet his right to wages for their labor is absolute and vested, if that labor has been performed without any previous act, agreement, or understanding otherwise. Of course he may, without intent to hinder, delay or defraud creditors, assign or relinquish this debt as any other. In the case of Kauffelt *v.* Moderwell, 9 Harris 222, we held, that when a minor is permitted by his father to make his own contract for services, it is fair to presume that he is allowed also to receive the wages for himself, and, so the law implies the contract, until a contrary purpose appears; but it is not so when the father makes the contract. "He has the right to command the services and receive the wages of his minor son, and when he makes a contract for them, there is no ground for the presumption that he is acting as an agent of his son, or that the other party knows it, and intends the contract to be with his son; and therefore the law cannot imply that such was the contract, as matter of fact, or impose it as a matter of duty. The private arrangement between the father and son, in this case, was a matter of their own, which constitutes no part of the transaction, and which is indeed revocable at the father's pleasure. To allow the recovery by the son in such a case, might defeat just claims of Kauffelt against the father."

Was there any relinquishment by John Bare of the services of his son, previous to his entering the employment of this firm, or at any time during its continuance, or afterwards, prior to the assignment? If not, then the father's right to these wages was vested and absolute, at the assignment, and that right, passing under it, vested in his assignee for creditors. The paper, dated 30th October, 1882, is of no avail, for the purpose intended; it came too late; that which he released or relinquished to his son, he had previously transferred to his creditors. This case should have been submitted to the jury, on the question of emancipation, which was practically withdrawn from the jury in the trial below. "No evidence of that sort," says the court, "was offered, so far as his wages was concerned, that he was allowed to receive his wages himself. I saw no evidence at all of that, in the case, the wages therefore at the time they were earned were by law due to the father."

This was a practical withdrawal from the jury of that branch of the case; there was, we think, some evidence for the jury on this question. The account for these services was in

the name of the son, not in the name of the father. No credit was given to the father for them, and the books were open to all the members of the firm. The plaintiff's charge for labor embraces two years and nine months, in which time there was no proof that the father claimed the benefit of them, whilst the son received all that ever was paid; he continued to labor after the assignment was made during minority, and received to himself wages from the assignee. These circumstances, taken with the testimony of the son, were certainly proper matters for the consideration of the jury; their weight, when taken with the fact that the contract was made by the father, and with other circumstances in the cause, was for the jury. What effect they might have had upon the minds of the jury is not for us to say, but we think the court was in error in saying that there was no evidence on the subject.

The judgment is reversed and a venire facias de novo awarded.