RICHARD A. ALLEN AND BARBARA ALLEN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

RICHARD A. ALLEN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2503-66, 2504-66.　Filed June 24, 1968.

*Robert R. Batt*, for the petitioners.
*B. David Freundlich*, for the respondent.

470

472

OPINION

RAUM, *Judge:* 1. *Inclusion of Bonus in Petitioner's Gross Income.—*
(a) Petitioner was only 18 years old when the events giving rise to the

bonus payments in controversy took place. Accordingly, if the payments made during the years in issue (1961–63) by the Phillies to Era Allen, petitioner's mother, constitute "amounts received in respect of the services" of petitioner within the meaning of section 73(a), I.R.C. 1954,[2] then plainly they must be included in petitioner's gross income rather than in that of his mother. Although petitioner contends that the statute does not cover the present situation, we hold that the payments made to his mother during the years in issue were received solely in respect of petitioner's services, and that all such amounts were therefore includable in his income.

Petitioner argues that the payments received by his mother, totaling $40,000 over a 5-year period, were not part of his bonus for signing a contract to play baseball for the Phillies organization, but rather represented compensation for services performed by her, paid by the Phillies in return for her influencing petitioner to sign the contract and giving her written consent thereto. But there was no evidence of any written or oral agreement between the Phillies and Era Allen in which she agreed to further the Phillies' interests in this manner, and we shall not lightly infer the existence of an agreement by a mother dealing on behalf of her minor child which would or could have the effect of consigning her child's interests to a secondary position so that she might act for her own profit. Moreover, we think the evidence in the record consistently points to the conclusion that the payments received from the Phillies by Era Allen were considered and treated by the parties as part of petitioner's total bonus of $70,000. This sum was paid by the Phillies solely to obtain the exclusive right to petitioner's services as a professional baseball player; no portion thereof was in fact paid for his mother's consent.

We note, first of all, that there was no separate written agreement between the Phillies and Era Allen concerning the payment of $40,000 to her, and that in fact the sole provision of which we are aware for the payment of this sum appears in the contract between petitioner and the Williamsport Baseball Club, a minor league baseball club affiliated with the Phillies under a "working agreement" which entitled the Phillies to claim the contract and the services of any player on the club at

---

[2] SEC. 73. SERVICES OF CHILD.

(a) TREATMENT OF AMOUNTS RECEIVED.—Amounts received in respect of the services of a child shall be included in his gross income and not in the gross income of the parent, even though such amounts are not received by the child.

(b) TREATMENT OF EXPENDITURES.—All expenditures by the parent or the child attributable to amounts which are includible in the gross income of the child (and not of the parent) solely by reason of subsection (a) shall be treated as paid or incurred by the child.

(c) PARENT DEFINED.—For purposes of this section, the term "parent" includes an individual who is entitled to the services of a child by reason of having parental rights and duties in respect of the child.

any time. Petitioner's contract, a uniform player's contract standard in professional baseball, contained a paragraph requiring the parties to set forth any "additional compensation" (aside from the regular payment of salary) received or to be received from the club "in connection with this contract," and it is in the space provided for such "additional compensation" that all the annual installments of petitioner's bonus, both those payable to petitioner and those payable to his mother, are set forth. After a description of all such installments, identifying the payee (petitioner or his mother), the amount and the date due, appear the words: "Total bonus seventy thousand dollars guaranteed." Moreover, if further proof be needed that the Phillies did not consider any part of the $70,000 bonus as compensation for Era Allen's services it is provided by the testimony of John Ogden, the baseball scout responsible for petitioner's signing a contract with the Phillies' organization. Although Ogden resisted being pinned down, the clear import of his testimony was that the total bonus paid was determined solely by petitioner's ability to play baseball and his future prospects as a player, that the Phillies considered $70,000 a fair price to pay for the right to petitioner's services, and that it made little difference to them whether petitioner's mother received any part of the bonus so determined.

Era Allen herself did not claim to be entitled to $40,000 by virtue of any services performed for or on behalf of the Phillies, and in fact made clear in her testimony that she bargained, as one would expect, "for whatever was best for my son." Rather, she insisted upon a large portion of petitioner's bonus because she felt that petitioner would never have reached the point at which he was able to sign a lucrative contract with a professional baseball team had it not been for her hard work and perseverance in supporting him. And indeed, as the mother of a minor child, one who by the fruits of her own labor had contributed to the support of her minor child without the help of the child's father, she appears to have been entitled to *all* of petitioner's earnings under Pennsylvania law. Pa. Stat. tit. 48, sec. 91 (1965).[3]

---

[3] SEC. 91. Mother to have same power and control over minor child as father; right of action for injuries to child

Hereafter a married woman, who is the mother of a minor child (and who contributes by the fruits of her own labor or otherwise toward the support, maintenance and education of her said minor child), * * * shall have the same and equal right to its custody and services and earnings as is now by law possessed by her husband, who is the father of such minor child: Provided, however, That the mother of such minor child is otherwise qualified as a fit and proper person to have the control and custody of said child. If either the father or the mother desert their child or fail to perform their parental duties the right to the custody, services, and earnings of the child shall belong to the other: Provided, however, That such remaining parent is otherwise qualified as a fit and proper person to have the control and custody of said child. * * *

The father's right to the earnings of a minor child under common-law doctrine has been long established in Pennsylvania. See *Kauffelt* v. *Moderwell*, 21 Pa. 222 (1853); *Beaver, Bare & Co.* v. *Bare*, 104 Pa. 58 (1883).

Prior to 1944, the Commissioner's rulings and regulations "required a parent to report in his (or her) return the earnings of a minor child, if under the laws of the state where they resided the parent had a right to such earnings," even if none or only part of the child's earnings were actually appropriated by the parent. *Jacob DeKorse*, 5 T.C. 94, 101, affirmed per curiam 158 F. 2d 801 (C.A. 6). See also O.D. 797, 4 C.B. 214; I.T. 2352, VI-1 C.B. 32. Because parents were not entitled to the earnings of their minor children in all States, and because even in those States following this common-law doctrine the parents' right to the earnings of a minor child could be lost if it was found that the child had been emancipated, the result of the Commissioner's policy was that:

for Federal income tax purposes, opposite results * * * obtain[ed] under the same set of facts depending upon the applicable State law. In addition, such variations in the facts as make applicable the exceptions to the general rule in each jurisdiction tend[ed] to produce additional uncertainty with respect to the tax treatment of the earnings of minor children.

H. Rept. No. 1365, 78th Cong., 2d Sess., p. 21 (1944); S. Rept. No. 885, 78th Cong., 2d Sess., p. 22. To remedy these defects, Congress in 1944 enacted the substantially identical predecessor of section 73 of the Internal Revenue Code of 1954, providing the easily determinable and uniform rule that all amounts received "in respect of the services of a child" shall be included in his income. "Thus, even though the contract of employment is made directly by the parent and the parent receives the compensation for the services, for the purposes of the Federal income tax the amounts would be considered to be taxable to the child because earned by him." H. Rept. No. 1365, 78th Cong., 2d Sess., p. 21 (1944); S. Rept. No. 885, 78th Cong., 2d Sess., p. 22, 23. We think section 73 reverses what would have been the likely result in this case under pre-1944 law wholly apart from the contract, and that the $70,000 bonus is taxable in full to petitioner.

Petitioner stresses the fact that the $70,000 bonus paid by the Phillies did not constitute a direct payment for his "services" as a professional baseball player, which were to be compensated at an agreed salary of $850 per month, for the $70,000 was to be paid in all events, whether or not petitioner ever performed any services for the Phillies organization. Therefore, it is argued, the bonus payments could not have constituted compensation for *services* which alone are taxed to a minor child under section 73. Cf. Rev. Rul. 58-145, 1958-1 C.B. 360. This argument misreads the statute, which speaks in terms of "amounts received *in respect of* the services of a child," and not merely of compensation for services performed. True, petitioner performed no services in the usual sense for his $70,000 bonus, unless his act of

signing the contract be considered such, but the bonus payments here were paid by the Phillies as an inducement to obtain his services as a professional baseball player and to preclude him from rendering those services to other professional baseball teams; they thus certainly constituted amounts received "in respect of" his services.

This is not merely a technically correct interpretation of the statute; it is consistent with and necessary to the achievement of its purposes. Although a bonus such as that involved here is admittedly an indirect rather than a direct payment for services, there can be little doubt that it would be considered part of a child's "earnings" for the purpose of the common-law rule giving a father the right to the services and earnings of his minor children,[4] and for the purpose of statutes such as that in Pennsylvania (Pa. Stat. tit. 48, sec. 91, fn. 3, *supra*), extending this right to the mother. So, if the uniform rule of section 73 be held inapplicable to such bonuses, their treatment for tax purposes when earned by a minor would then be subject once again to the peculiarities of local law and to the factual imbroglio precipitated by the common-law rules in respect of the earnings of a minor child, the very problems which led to the enactment of section 73. To be sure, the committee reports on the predecessor of section 73 refer at one point to the need for uniformity in the taxation of "compensation for *services performed* by a minor child" (emphasis added), but it seems likely that the bonus situation which we have here was at most overlooked, not intentionally omitted. Certainly the legislators took no chances with the statute itself, which speaks in the much broader terms of any "amounts received in respect of the services" of a child. There is no readily apparent reason why the narrow construction urged by petitioner should have been intended by Congress, and the language of the committee reports, though not necessarily inconsistent with the result we reach, must in any event yield in the interpretation of section 73 to the clear legislative purposes which prompted its enactment. Cf. *Alfred N. Hoffman*, 47 T.C. 218, 235, affirmed per curiam 391 F. 2d 930 (C.A. 5).

(b) Even if the amounts in issue were not received "in respect of the services" of a child under section 73, we think that the bonus installments paid to petitioner's mother during the tax years 1961–63 are nevertheless chargeable to him under the general provisions of section 61.[5] It has long been established that one who becomes entitled to

---

[4] For the rationale given by the Supreme Court of Pennsylvania of the common-law doctrine that a parent is entitled to the services and earnings of his child, see *Beaver, Bare & Co.* v. *Bare*, 104 Pa. 58, 62 (1883).

[5] SEC. 61. GROSS INCOME DEFINED.

(a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

receive income may not avoid tax thereon by causing it to be paid to another through "anticipatory arrangements however skillfully devised." *Lucas* v. *Earl*, 281 U.S. 111, 114–115; *Helvering* v. *Horst*, 311 U.S. 112; *Helvering* v. *Eubank*, 311 U.S. 122; *Harrison* v. *Schaffner*, 312 U.S. 579.

As indicated above, the entire $70,000 bonus was paid as consideration for petitioner's agreement to play baseball for the Phillies or any team designated by the Phillies. We reject as contrary to fact the argument that part of that amount was paid to his mother for her consent to the contract. It was petitioner, and petitioner alone who was the source of the income, and it is a matter of no consequence that his mother thought that she was entitled to some of that income because of her conscientious upbringing of petitioner. Regardless of the motives involved, the situation remains one of deflection of a portion of petitioner's bonus income to his mother and he cannot escape the tax consequences thereof.

Accordingly, even if the bonus payments may not be considered as amounts received in respect of services so as to be covered by section 73(a), they nevertheless represent income of petitioner, taxable to him, notwithstanding the arrangement to have a portion thereof paid to his mother.

2. *Petitioner's Alternative Contention—Deduction of Bonus Payments From His Gross Income.*—Finally, petitioner argues alternatively that if his entire $70,000 bonus is includable in his income, he should be allowed to deduct the bonus payments received by his mother as an ordinary and necessary" expense incurred in carrying on his trade or business as a professional baseball player. He places great reliance in this argument upon *Cecil Randolph Hundley, Jr.*, 48 T.C. 339, acq. 1967-2 C.B. 2, a case recently decided by this Court in which a professional baseball player was allowed to deduct that portion of his bonus for signing a baseball contract which was paid directly to his father, the result of an agreement entered into some 2 years before the contract was signed as a means of compensating the father for his services as a baseball coach and business agent.[6] However, the special facts in *Hundley*, which supported a finding of reasonableness for the amount of the deduction claimed and warranted the conclusion that the amounts paid there in fact represented a bona

---

[6] As here, the player originally attempted to exclude all amounts received by his father from his gross income, and the Commissioner contended that such amounts were includable in his income under sec. 61(a) and sec. 73, since the player there was also a minor when the contract was signed. The player subsequently conceded on brief that all bonus payments were properly includable in his gross income, including those made directly to his father. And in the opinion it was noted that "beyond question * * * the $11,000 received by * * * (petitioner's father) actually represented an amount paid in consideration of obtaining petitioner's services as a professional baseball player." 48 T.C. 339, 344.

fide expense incurred in carrying on the taxpayer's trade or business of being a professional baseball player, are almost entirely absent here.[7]

It is unnecessary to determine the exact sum which would have constituted a reasonable payment to Era Allen for her services, though we note that only $2,000 was paid to her son Coy Allen for the advice she so greatly relied on, for we are certain that in any case it could not have exceeded the $16,000 received by her in 1960. Although the year 1960 is not before us in these proceedings, we can and do take into account the payment made to her in that year in determining whether the deductions now claimed by petitioner for payments made to her in the years 1961, 1962, and 1963 are reasonable in amount and deductible as "ordinary and necessary" business expenses. We think they clearly are not, and hold that petitioner is not entitled to deductions in any amount for payments made to his mother in those years.

*Decisions will be entered for the respondent.*

---

[7] In *Hundley,* the player's father was a former semiprofessional baseball player and baseball coach who spent many hours coaching his son, at the expense of his own construction business, teaching him a "unique one-handed catching technique" and making him into a baseball player of professional caliber; he traveled for 2 years at his own expense to keep in close touch and on friendly terms with all the baseball scouts; and when his son graduated from high school he conducted the final negotiations in an "unusual and skillful" manner whereby all the representatives of the various baseball teams were allowed to make secret offers during a 2-week period following his son's graduation from high school. See 48 T.C. 339, 346. Here, on the other hand, petitioner's mother had nothing whatever to do with her son's development as a baseball player, and in fact knew nothing about baseball or financial matters and had to rely upon her son Coy Allen in her negotiations with the scouts. Moreover, in *Hundley,* the large sum payable to the father was received under a contingent compensation agreement entered into some 2 years earlier which entitled him to receive 50 percent of any bonus which his son might receive for signing a baseball contract. Since the agreement had been reached at a time when it was uncertain whether the son would develop into a player of professional baseball caliber and, even if he did, whether he would receive any bonus whatever, and when bonuses that were paid by professional baseball teams were usually small, the Court held that the agreement was reasonable when made and that the compensation received thereunder was therefore reasonable in amount. There was no preexisting agreement between petitioner and his mother in this case, however, and no persuasive explanation as to why her services were thought to be worth $40,000.