David G. Baird and Mildred B. Baird v. Commissioner.
Baird v. Commissioner
Docket No. 5794-65.
United States Tax Court
T.C. Memo 1969-67; 1969 Tax Ct. Memo LEXIS 229; 28 T.C.M. (CCH) 381; T.C.M. (RIA) 69067; April 9, 1969, Filed Charles Becker and Herbert W. Mintz, for the petitioners. Rudolph J. Korbel, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined a deficiency of $459,542.01 in petitioners' 1955 income tax. The sole issue is whether the transfer of 27,000 shares of Bellanca Aircraft Corporation stock from L. Albert & Son to the *230 Winfield Baird Foundation constituted income to petitioner David Baird or a gift to the Foundation. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners are husband and wife who had their legal residence in Montclair, New Jersey, at the time of filing the petition herein. They filed a joint Federal income tax return for the taxable year 1955 with the district director of internal revenue, Lower Manhattan, New York. Mildred B. Baird is a party hereto only because she filed such return with her husband. Reference to petitioner shall be deemed to refer to petitioner David G. Baird. Petitioner is a well-known philanthropist who served as senior trustee of the Winfield Baird Foundation (hereinafter the "Foundation") at all relevant times. In 1955, he was a senior partner in the stock exchange firm of Baird & Company and served as a director of several business institutions and public charities. At times, including 1955, he functioned as a business broker or finder in connection with the merger and acquisition of corporations. In 1951, petitioner met Sydney L. Albert (hereinafter Albert), who, with his wife, owned the partnership of L. *231 Albert & Son, which engaged in the purchasing and rebuilding of used rubber machinery in Akron, Ohio. Thereafter, the Winfield Baird Foundation, represented by petitioner as trustee, engaged in several transactions with Albert or L. Albert & Son, including the making of secured loans and the sale of the Lake City Malleable Iron Company owned by the Foundation. Albert frequently visited petitioner in his office to discuss business conditions and trends. Albert became interested in selling the partnership business and discussed this situation with petitioner, who introduced Albert to Fred O. Schoeffer (hereinafter Schoeffer) as a representative of a possible interested party. In 1955, on petitioner's business premises, Albert and Schoeffer discussed the possibility of merging L. Albert & Son into Sentry Safety Control, a corporation in which Schoeffer and the Foundation had a substantial interest, but they quickly determined that the merger was not feasible. During the course of this meeting, Schoeffer telephoned Howard Hansell (hereinafter Hansell), who had formed a group which had purchased a substantial interest in Bellanca Aircraft Corporation (hereinafter Bellanca) and desired *232 an acquisition for Bellanca. This conversation was the inception of a transaction between Bellanca and L. Albert & Son, whose details were arranged through negotiations by Albert, Hansell, Schoeffer, and one Joseph Patrick (hereinafter Patrick). Petitioner had known all of the principals for several years and had contact with them in the course of his various business activities. During the Bellanca-L. Albert & Son negotiations, he telephoned Albert to introduce Hansell and to facilitate arranging an appointment for Hansell to inspect the L. Albert & Son plant. Petitioner also discussed with Schoeffer the question of the 382 latter's proper finder's fee for the Bellanca-L. Albert & Son transaction. On March 15, 1955, L. Albert & Son exchanged substantially all its assets for 1,071,250 shares of Bellanca then worth approximately $12,000,000. Out of these shares, Hansell received 15,000 shares, Schoeffer 7,000, and Patrick an indeterminate number, as finder's fees or commissions. Both Hansell and Schoeffer experienced difficulty in obtaining from Albert what they considered an adequate finder's fee. On August 15, 1955, L. Albert & Son transferred 27,000 shares of Bellanca stock, *233 which then had a value of $671,625, to the Foundation. L. Albert & Son reported this transfer as a charitable contribution on its 1955 partnership income tax return. Opinion The sole issue herein is "basically one of fact," namely, the proper characterization of the transfer of the 27,000 shares of Bellanca stock to the Winfield Baird Foundation by L. Albert & Son. See Commissioner v. Duberstein, 363 U.S. 278, 290 (1960). Respondent has determined that the shares constituted income to petitioner under section 61. [1] His determination is presumptively correct and the burden of proof is entirely upon petitioner, since he makes no claim that the provisions of section 6501(e)(1) apply. See, e.g., Frank W. Williamson, 27 T.C. 647, 659 (1957). We hold that petitioner has failed to sustain his burden. Petitioner contends that the stock was a gift to the Foundation, motivated by Albert's interest in petitioner's charitable activities which developed through a series of contacts over a period of years. Respondent asserts that the transfer of the stock was compensation to petitioner. *234 [2]
Petitioner's case rests simply upon the assertions that he had an attenuated role in the Bellanca-L. Albert & Son exchange, that the partnership characterized the transfer as a charitable contribution on its tax return, and that the preparer of the return testified in general terms that Albert told him that a charitable contribution was intended. Against these assertions are the facts that petitioner and Albert had a long-standing and fruitful business connection, [3] that Albert showed no inclination readily to dispense stock to Hansell and Schoeffer, indicating that he desired to conserve his holdings and maximize the benefits he received from the exchange; and that the admitted value of the alleged contribution was extremely large, namely, $671,625. Petitioner was a key witness on his own behalf. His testimony was skillfully confined to the claimed lack of relationship *235 of the transfer to compensation for the Bellanca-L. Albert & Son transaction and did not deal with the question of the broader relationship of the transfer to the totality of his services to Albert. In the final analysis, we found petitioner's testimony unconvincing on the ultimate factual determination involved herein. Albert was subpoenaed as a witness, but not called, by respondent. He took the stand at petitioner's request merely for the purpose of identifying the partnership tax return and he was held for possible further testimony at the request of petitioner's counsel. Petitioner claims that respondent failed to call Albert to testify because he had concluded that such testimony would be unfavorable to his position and that we should view this failure as a strong indication of the correctness of petitioner's position. We disagree. The burden of proof being on petitioner, any inference which might be drawn from respondent's failure to call Albert cannot independently supply proof which is otherwise lacking. See McCormick on Evidence (1954 ed.), p. 535; II Wigmore on Evidence (3rd ed.), pp. 169-171. Compare Wichita Terminal Elevator Co., 6 T.C. 1158, 1165 (1946). *236 The hard fact is that, aside from the mere characterization of the transfer of the Bellanca shares as a charitable contribution on the partnership return and the generalized testimony of the preparer of the return, petitioner has furnished us with no probative evidence to support his position. Moreover, where, as is the case herein, a witness (i.e., Albert) is equally accessible to both parties, any inference from his failure to testify should be drawn against the party 383 having the burden of proof (i.e., petitioner), or, at most, the inference should be that the testimony would have been as likely to be favorable to one party as to the other. Cf. section 7453; Culp v. Repper, 78 F. 2d 221 (C.A.D.C. 1935); see McCormick, supra, p. 534; Wigmore, supra. Even if we accept the proposition that petitioner remained a peripheral figure in the Bellanca-L. Albert & Son transaction, we cannot overlook the fact that petitioner had the known capability to introduce people with complementary business demands and to marshal vast resources throughout the financial community. These abilities represented a useful asset to persons who were seeking to develop significant financial *237 and business transactions. These abilities were utilized by Albert for his benefit in financial dealings not related to the Bellanca-L. Albert & Son transaction. Moreover, these abilities have an important bearing on our evaluation of petitioner's role in that transaction. Petitioner knew all the participants; he telephoned Schoeffer when Albert visited his office; the initial meeting between Schoeffer and Albert took place on petitioner's business premises; he telephoned Albert to introduce Hansell and to arrange for Hansell to visit the former's plant; he was consulted as to a suitable finder's fee for the transaction. We are satisfied that, but for petitioner's contact with each of the key participants, they would not have come together to negotiate the Bellanca-L. Albert & Son transaction. While petitioner may not have involved himself in the actual negotiations, his role was that of a catalyst. This catalytic role, although perhaps minimal in terms of the effort expended by petitioner, was an essential factor to the completed product and might well have entitled petitioner to a substantial participation in the fruits of the transaction. In any event, it clearly is not a requirement *238 to includability of compensation in gross income that a taxpayer have a legally enforceable claim thereto. Commissioner v. Duberstein, supra.
To be sure, the Foundation rather than petitioner received the Bellanca shares. But the mere fact that a third person receives payment is not determinative of the issue of compensation. E.g., Lucas v. Earl, 281 U.S. 111 (1930); Richard A. Allen, 50 T.C. 466, 477 (1968), on appeal (C.A. 3, Sept. 23, 1968). Whatever significance might have attached if the Bellanca shares had been transferred to a public charitable organization (and particularly if petitioner had had no relationship to that organization), the transfer of these shares to a family foundation with which petitioner was intimately connected is, at the very least, an element to be considered in determining whether a charitable rather than compensatory characterization should attach to the transaction. In short, there are several factors, some subtle and some not so subtle, which point up the non-charitable considerations that were at work in the instant situation. There is a history of petitioner's prior services to Albert. There is petitioner's *239 role in effecting the L. Albert & Son-Bellanca exchange. There is the anticipation of future business advantage to Albert from his relationship with petitioner. Cf. United States v. Transamerica Corporation, 392 F. 2d 522 (C.A. 9, 1968); Sarah Marguis, 49 T.C. 695, 702 (1968); Jordon Perlmutter, 45 T.C. 311, 318 (1965); Max Kralstein, 38 T.C. 810, 818 (1962). Under the circumstances herein, we find it unnecessary to dissect the "subjective and occasionally ephemeral concepts" of a "gift" [4] which are reflected in the decided cases. See Jordon Perlmutter, supra, 45 T.C. at p. 317. A careful perusal of the entire record herein leaves us unconvinced, based upon our "experience with the mainsprings of human conduct" (see Commissioner v. Duberstein, supra, 363 U.S. at p. 289), that the basic considerations for the transfer of the Bellanca shares were charitable rather than the services rendered by petitioner. To conclude that petitioner has met his burden of proof would demand that we "withdraw into an ivory tower, ignore the economic realities of the marketplace, and make all the assumptions in his [petitioner's] *240 favor." See Wingate E. Underhill, 45 T.C. 489, 493 (1966). We would, perforce, assume a mantle of naivete which we are neither required nor inclined to do. Decision will be entered for the respondent. 384 Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended.↩
2. Petitioner has not argued that, even if the transfer were compensatory, it should not be attributed to him because it was made to the Foundation rather than to petitioner.↩
3. The record herein is devoid of any evidence that there was any social relationship whatsoever between petitioner and Albert.↩
4. While Albert reported the transfer as a "charitable contribution," this phrase is synonymous with the word "gift." Harold DeJong, 36 T.C. 896, 899 (1961), affd. 309 F. 2d 373 (C.A. 9, 1962); Channing v. United States, 4 F. Supp. 33, 34 (D. Mass. 1933), affirmed per curiam 67 F. 2d 986↩ (C.A. 1, 1933).