ROBERT T. FRITSCHLE AND HELEN R. FRITSCHLE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 134–81.     Filed July 27, 1982.

*Charles M. Lock*, for the petitioners.
*David G. Justl* and *Donald L. Wells*, for the respondent.

FAY, *Judge*: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows:

|       |            | *Addition to tax* |
|-------|------------|-------------------|
| *Year* | *Deficiency* | *sec. 6653(b)*[1] |
| 1975  | $1,173.40  | $586.70           |
| 1976  | 1,809.97   | 904.99            |
| 1977  | 200.00     | 0                 |

After concessions,[2] the remaining issues are (1) whether payments received in 1975, 1976, and 1977 by petitioner Helen R. Fritschle for assembling ribbons and rosettes are includable in petitioners' gross income; (2) whether certain payments received in 1975 and 1976 by petitioner Robert T. Fritschle are deductible reimbursed employee expenses; (3) whether petitioners are entitled to a dependency exemption in 1977 for their 18-year-old daughter.[3]

### FINDINGS OF FACT

Some of the facts are stipulated and are found accordingly.

Petitioners Robert T. Fritschle and Helen R. Fritschle resided in St. Louis, Mo., when they filed their petition herein.

Petitioners have 11 children. The 8 youngest children lived at home with their parents during the years in issue.

Since 1956, petitioner Robert T. Fritschle (Robert) has been employed by American Gold Label Co. (AGL), a sole proprietorship owned by Elsie Walsh Fabel and engaged in the printing business. During the years in issue, Robert was general manager in charge of virtually every aspect of the business. In addition to wages of less than $10,000 a year, AGL paid Robert $1,060 and $1,113 in 1975 and 1976, respectively, as reimbursement for his out-of-pocket company incidental expenses such as automobile and gas costs, parts for repairs, office supplies, and postage.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended.

[2]Respondent conceded the fraud issue on reply brief.

[3]Also in issue is whether petitioners omitted from their 1975 gross income an amount in excess of 25 percent of the gross income stated on their 1975 Federal income tax return. If so, respondent is not barred from assessing the 1975 tax since the 6-year statute of limitations applies. See sec. 6501(e). Petitioners reported 1975 gross income of $9,540. Thus, in the event we find greater than $2,385 was omitted from petitioners' 1975 gross income, respondent will not be barred from assessing 1975 taxes. Resolution of this issue depends solely on the outcome of other issues stated above. The parties agree respondent is not barred from assessing 1976 and 1977 taxes.

Prior to 1970, AGL was engaged in a printing business generally limited to letterheads and stationery. Beginning in 1970, the business expanded to include more specialized types of printing which included printing on metals and cloth. Specifically, new items printed included ribbons and rosettes, much like the ribbons seen at horse and dog shows or the ribbon awarded the prize bull at the county fair. Even though AGL employed 15 people, outside help was needed to assemble the ribbons when the printing was completed. Petitioner Helen R. Fritschel (Helen) agreed with Elsie Walsh Fabel, the owner of AGL, to assemble the ribbons at home. Accordingly, in 1970, Helen, with the help of their children then living at home, began assembling ribbons and rosettes for AGL. From 1970 through 1976, this piecework was done in the basement washroom. In 1977, production was moved to the furnace room. The work involved cutting, shaping, and stapling of things like streamers, bezels, and ribbons to form the final product.

All materials were furnished by AGL at no cost to Helen. When the work was completed, Helen submitted a bill and received payment accordingly. During the years in issue, Helen was paid 3 cents per ribbon and 15 cents to 25 cents per rosette. Total payments received during 1975, 1976, and 1977 were $9,429.74, $11,136.41, and $8,262, respectively.

The children performed approximately 70 percent of all the work. Robert, the father, did not participate. The children were not employees of either Helen or AGL, nor was there any other arrangement for them to share directly in the compensation paid to Helen by AGL.

Petitioners' daughter, Diana, turned 18 in 1977. She lived at home during the entire year. Diana worked at AGL for 9 months during 1977, earning wages totaling $3,988.15. She traveled to and from work with her father. Petitioners furnished her room, board, clothes, and transportation.

Petitioners did not report the income received by Helen in 1975 and 1976 for assembling the ribbons and rosettes. In 1977, the income received by Helen was reported.[4] Petitioners

---

[4]Since petitioners included all payments received in 1977 for this work in their 1977 Federal income tax return, they now claim an overpayment of taxes for 1977. See sec. 6512(b).

did not include in gross income the reimbursed employee business expenses of Robert in 1975 and 1976. Petitioners claimed a dependency exemption for Diana in 1977.

In his notice of deficiency, respondent determined petitioners must include in income all payments received by Helen for work performed in assembling the ribbons and rosettes and all payments received by Robert for reimbursed incidental business expenses. Respondent also disallowed the dependency exemption for Diana in 1977.

OPINION

### 1. Payments to Helen for Ribbons and Rosettes

Helen and the children assembled the ribbons and rosettes in the basement of their home. There is no question that payments received for this work are income under section 61. The issue is who is taxable on those payments. Since a portion of the compensation was attributable to work performed by their children, petitioners argue that a proportionate amount of the payments should be included in the income of the children. Respondent contends Helen was responsible for, and retained total control over, the earnings, and, therefore, the income is properly includable in her income. We find for respondent.

It is axiomatic that income must be taxed to him who earns it. *Lucas v. Earl*, 281 U.S. 111 (1930); *Commissioner v. Culbertson*, 337 U.S. 733 (1949); *Burnet v. Leininger*, 285 U.S. 136 (1932); *Corliss v. Bowers*, 281 U.S. 376 (1930). Moreover, it is the command of the taxpayer over the income which is the concern of the tax laws. *Harrison v. Schaffner*, 312 U.S. 579, 581 (1941). Recognizing that the true earner cannot always be identified simply by pointing "to the one actually turning the spade or dribbling the ball," this Court has applied a more refined test—that of who controls the earning of the income. *Johnson v. Commissioner*, 78 T.C. 882, 890 (1982).[5] Applying

---

[5]Although *Johnson v. Commissioner*, 78 T.C. 882 (1982), arose in the context of the taxation of a professional service corporation (a basketball player), the principles enunciated therein are universally applicable. See *Vnuk v. Commissioner*, 621 F.2d 1318, 1320–1321 (8th Cir. 1980), affg. a Memorandum Opinion of this Court; *Ronan State Bank v. Commissioner*, 62 T.C. 27, 35 (1974). See also *Vercio v. Commissioner*, 73 T.C. 1246, 1253 (1980); *Wesenberg v. Commissioner*, 69 T.C. 1005 (1978); *American Savings Bank v.*

this test, it is clear that, for purposes of taxation, Helen, and not the children, was the true earner of the income attributable to the work performed on the ribbons and rosettes.

Helen was solely responsible for the performance of all services. AGL contracted only with Helen, and no contract or agreement existed between AGL and any of the children. All checks were made payable to Helen, and the children received no direct payments or compensation for their work. Clearly, the compensation was made in payment purely for the services of Helen. Although the company knew the children were performing part of the work, that does not change the fact that AGL looked exclusively to Helen for performance of the services.[6] In short, Helen managed, supervised, and otherwise exercised total control over the entire operation. It was she who controlled the capacity to earn the income, and it was she who in fact received the income. It does not necessarily follow that income is taxable to the one whose personal efforts produced it. Thus, despite the fact that a portion of the amounts received can be traced to work actually performed by their children, Helen is treated as the true earner of all such income for tax purposes. Accordingly, pursuant to section 61, petitioners must include all payments received in 1975, 1976, and 1977 for assembling the ribbons and rosettes in their gross income.[7]

---

*Commissioner*, 56 T.C. 828, 839 (1971); *Foglesong v. Commissioner*, T.C. Memo. 1976–294, revd. and remanded 621 F.2d 865 (7th Cir. 1980), decided on remand 77 T.C. 1102 (1981), appeal filed (7th Cir., Feb. 16, 1982).

[6]We are given no reason to believe AGL intended to contract for the services of the children. Thus, we do not place controlling significance on the fact that, under applicable State law, minors may lack capacity to enter into valid contracts. Moreover, no trustee or legal guardian was appointed on behalf of the children.

[7]In 1975, those payments totaled $9,429.74. Since this amount exceeds 25 percent of the gross income reported on petitioners' 1975 Federal income tax return, respondent is not barred from assessing the 1975 taxes. See note 3 *supra*. Moreover, petitioners have not overpaid their 1977 taxes. See note 4 *supra*.

Petitioners make no claim for a deduction with respect to the services rendered by the children. Indeed, no such deduction would be allowable since no payments to the children were made or set aside in some way for their services actually performed. The only benefit accruing to the children was an increased budget for general family and living expenses. See *Romine v. Commissioner*, 25 T.C. 859 (1956), wherein a taxpayer's expenditures on his son's behalf for clothing, insurance, and college were held to be nondeductible personal expenses and not payments for services actually rendered. Compare *Hundley v. Commissioner*, 48 T.C. 339 (1967), wherein a professional baseball player, Randy Hundley, was allowed a business expense deduction for paying over to his father 50 percent of the bonus he received for signing with the San Francisco Giants. See also *Roundtree v. Commissioner*, T.C. Memo. 1980–117.

Nevertheless, petitioners argue section 73 mandates a result in their favor. Section 73(a) provides:

SEC. 73(a). TREATMENT OF AMOUNTS RECEIVED.—Amounts received in respect of the services of a child shall be included in his gross income and not in the gross income of the parent, even though such amounts are not received by the child.

Petitioners argue the language and meaning of section 73 are clear, and that the amounts received by Helen with respect to the services performed by the children clearly are included in the gross income of the children. However, when viewed in light of the origin and purpose of section 73, it is apparent that section was enacted in response to a different situation and, under these facts, does not purport to tax the children on a portion of the income at issue herein.

The purpose of section 73 is to provide, for Federal tax purposes, consistent treatment of compensation paid for the services of a minor child regardless of different rights conferred by State laws on parents' entitlement to such compensation. Prior to 1944, a parent was required to include in income all earnings of a minor child if, under the laws of the State where they resided, the parent had a right to those earnings. *DeKorse v. Commissioner*, 5 T.C. 94, 101 (1945), affd. per curiam 158 F.2d 801 (6th Cir. 1946). Since parents in all States were not entitled to the earnings of their minor children and since even in those States following the common law doctrine of the parents' right to those earnings, a parent could lose such rights if the child had been emancipated, different tax results obtained depending on State law. See detailed discussion in *Allen v. Commissioner*, 50 T.C. 466 (1968), affd. 410 F.2d 398 (3d Cir. 1969). To eliminate this discrepancy in the tax treatment of the earnings of minor children, Congress, in 1944, enacted the predecessor to section 73[8] to provide a uniform rule that all amounts received "in respect of the services of a child" shall be included in the income of that child regardless of the fact that, under State law, the parent may be entitled to those amounts. Thus, section 73 operates to tax a minor child on income he is deemed, in the tax sense, to have earned.

---

[8]Sec. 22(m), I.R.C. 1939, as amended; sec. 7, Pub. L. 315, 58 Stat. 231, 235, Individual Income Tax Act of 1944.

Section 73 does not purport to alter the broad principle of taxation that income is taxed to the earner. See *Lucas v. Earl*, 281 U.S. 111 (1930), and its progeny. As we have already held, Helen (the mother) is the true earner of the income, herein, for tax purposes. She contracted for and retained total control of the earning of the income.

If, on the other hand, we made a finding that it was the services of the children that were being contracted for and that the children were the true earners of the income, then section 73 would tax the children on that income. *Allen v. Commissioner*, 50 T.C. 466 (1968), affd. 410 F.2d 398 (3d Cir. 1969).[9] This is so despite State law.[10]

While from a literal reading of the statute, petitioners' argument has superficial appeal, petitioners incorrectly assume the children are the true earners of the income in the first instance. However, section 73 simply does not tax a child on income until and unless he is recognized as the earner thereof. Petitioners' argument that these amounts must be included in the children's gross income because the income can be traced to services performed by the children must be rejected. Carrying this argument to its logical extreme, any parent could exclude a portion of the income received for services if his children helped him in the performance of those services. Congress surely did not intend such a result.[11]

In summary, we find Helen the true earner of all amounts received for the ribbons and rosettes, and section 73 does not operate to include any portion of those amounts in the gross incomes of the children. Accordingly, petitioners must include

---

[9]In *Allen v. Commissioner*, 50 T.C. 466 (1968), affd. 410 F.2d 398 (3d Cir. 1969), sec. 73 was applied to tax a minor son, Richard Allen, on a $70,000 bonus for signing a professional baseball contract that was paid by the Philadelphia Phillies directly to his mother.

[10]Apparently, under the law of Missouri, a parent is entitled to the services and earnings of his child. See *Franklin v. Butcher*, 144 Mo. App. 660, 129 S.W. 428 (1910).

[11]The Committee reports state: "Thus, even though the contract of employment is made directly by the parent and the parent receives the compensation for the services, for the purposes of the Federal income tax, the amounts would be considered to be taxable to the child because earned by him." H. Rept. 1365, 1944 C.B. 821, 838; S. Rept. 885, 1944 C.B. 858, 876. Citing these reports, petitioners argue it could not be clearer that the children are taxable on the amounts in issue. This language, however, merely recognizes parents must be the contracting party when, due to their legal incapacity, minor children cannot enter into valid contracts. It must still be shown that the services of the child were being contracted for and that the children controlled the earning of the income therefrom.

in their gross income all payments received for the ribbons and rosettes.

## 2. Payments to Robert for Incidentals

In addition to wages, Robert received payments of $1,060 and $1,113 from AGL in 1975 and 1976, respectively. We have already found as fact that all of these amounts were paid to Robert for incidental business expenses of AGL which were paid out of his own pocket. Thus, we reject respondent's contention that these were payments for services rendered (maintenance work). We hold petitioners are entitled to a section 162 business deduction for these amounts.[12]

## 3. Dependency Exemption

The issue is whether petitioners are allowed a dependency exemption for their 18-year-old daughter Diana.

Parents are entitled to an exemption for any of their children younger than 19 years old if they provide over half of that child's support. Secs. 151(e) and 152(a). Respondent claims petitioners have failed to establish they paid over half of Diana's support. Petitioners claim otherwise. We find for petitioners.

Diana lived at home with her parents the entire year. She worked at her father's business, AGL, for 9 months of the year earning $3,988.15 at minimum wages. Not all of her earnings were spent for her own support. Petitioners furnished Diana's room and board, clothes, transportation, and living expenses. Diana received no support from other sources. Based on the record, we are convinced petitioners did in fact furnish over half of Diana's support; thus, we allow the claimed exemption.

While we have disposed of the issues before us, we have really only touched the surface of this case. Respondent asserted fraud on the part of petitioners, the parents of an

---

[12]Since Robert was not required to account to his employer and, in fact, made no accounting for incidental expenses for which he was reimbursed, he does not fall within the exception to the general rule that employees are required to include reimbursements in gross income. See sec. 1.162–17(b), Income Tax Regs. Thus, the proper reporting procedure is to include the payments in gross income and run it through petitioners' income with an offsetting deduction in the same amount. The procedure utilized may make a difference when, as in this case, there is a question of whether the taxpayer omitted from gross income 25 percent of the gross income shown on the return. See notes 3 & 7 supra.

industrious and hardworking family of 13, none of whom has ever had a scrape with the law. First, the record shows petitioners are clear of any impropriety or bad faith. Second, it is apparent the fraud allegation had a deep and resounding effect on this family. The mere allegation of fraud can tarnish a man in the eyes of his neighbors and, more importantly, in his own eyes. We are not dealing here only with tax deficiencies and money; we are dealing with people's lives. Fraud should be asserted with discretion.

This Court spent over 9 hours listening to testimony and conducting discussions with the parties in chambers. By far, the largest portion of that time was devoted to the fraud issue, and it is apparent respondent had no chance of presenting a case sufficient to carry his burden of proof. Petitioners manifested a sincere willingness to settle this case if the fraud allegation was dropped. In reality, this case should never have come before this Court. Facing an ever-increasing backlog of cases, this Court's valuable time commands a better sense of responsibility by those practicing before it.[13] The scars and wasted time are not undone by respondent's concession of the fraud issue on brief.

To reflect concessions and the foregoing,

*Decision will be entered under Rule 155.*

---

[13]We will not hesitate to call attention to an unsettling situation when the time and effort expended by the parties and this Court in litigation are totally disproportionate to any requirement of justice. See *Buffalo Tool & Die Mfg. Co. v. Commissioner,* 74 T.C. 441, 451–452 (1980); *Scott v. Commissioner,* T.C. Memo. 1972–109 (Tannenwald, J.).