T.C. Memo. 2018-160

UNITED STATES TAX COURT

BRIAN D. RAY AND BETSY RAY, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25455-15.                    Filed September 20, 2018.

<u>James C. Pennington</u>, for petitioners.

<u>Sheila R. Pattison</u> and <u>Roberta L. Shumway</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, <u>Judge</u>: Respondent determined deficiencies in and additions to tax under section 6651(a)(1)[1] and accuracy-related penalties under section 6662(a) on petitioners' Federal income tax, as follows:

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|------|-----------|------------------|----------------|
| 2006 | $14,345 | $2,868.75 | $2,307.00 |
| 2007 | 16,710 | 3,446.75 | 2,757.40 |
| 2008 | 22,956 | 4,611.00 | 3,688.80 |
| 2009 | 33,746 | 7,101.25 | 5,681.00 |
| 2010 | 34,935 | 7,414.50 | 5,931.60 |
| 2011 | 29,047 | 6,889.50 | 5,511.60 |

After concessions,[2] the issues remaining for decision for tax years 2006, 2007, 2008, 2009, 2010, and 2011 (years at issue) are whether: (1) the income from checks to petitioners' children from the National Home Education Research

---

[2]As part of his opening statement, respondent conceded that the following amounts paid to petitioners' children were not income to petitioners: (1) $2,774.48 for tax year 2006, (2) $3,075.21 for tax year 2007, (3) $416.11 for tax year 2008, (4) $100 for tax year 2010, and (5) $3,515.24 for tax year 2011. Further, on the basis of witnesses' testimony at trial, respondent conceded that: (1) the $250 check from Mr. and Mrs. Tindall deposited into petitioners' Visa account at the Oregon State University (OSU) Credit Union (OSU Visa account) was a gift and not taxable income to petitioners for tax year 2006, (2) the $30 check from Eleanor and Steven Briggs deposited into the OSU Visa account was a gift and not taxable income to petitioners for tax year 2006, (3) the $120 check from Eleanor and Steven Briggs deposited into the OSU Visa account was a gift and not taxable income to petitioners for tax year 2006, (4) the $50 check from Eleanor and Steven Briggs deposited into the OSU Visa account was a gift and is not taxable income to petitioners for tax year 2007, and (5) the $1,700 check from Criminology for Dummies deposited into petitioners' savings account at Marion and Polk Schools (MAPS) Credit Union (MAPS savings account) was a gift and not taxable income to petitioners for tax year 2009.

[*3] Institute (NHERI checks) should be attributed to petitioners, (2) petitioners failed to report certain receipts on Schedule C, Profit or Loss From Business, (3) petitioners are liable for additions to tax under section 6651(a)(1), and (4) petitioners are liable for accuracy-related penalties under section 6662(a).

FINDINGS OF FACT

Some of the facts are stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Oregon when the petition was filed.

I.      Petitioners' Background

During the years at issue petitioners, Brian D. Ray and Betsy Ray, lived on their six-acre farm in Oregon with six of their eight children.[3] During those years

---

[3]During the years at issue the ages of petitioners' children who resided on the family's farm were as follows:

|          |      |      | Year |      |      |      |
|----------|------|------|------|------|------|------|
| Name     | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 |
| Hanna R. | 20   | 21   | 22   | 23   | 24   | 25   |
| Daniel R.| 18   | 19   | 2[0] | 21   | 22   | 23   |
| C.R.     | 15   | 16   | 17   | 18   | 19   | 20   |
| E.R.     | 13   | 14   | 15   | 16   | 17   | 18   |
| A.R.     | 11   | 12   | 13   | 14   | 15   | 16   |
| M.R.     | 8    | 9    | 10   | 11   | 12   | 13   |

[*4] petitioners home schooled their children. As part of their home school curriculum, petitioners taught their children the importance of working together to take care of the household's needs, including the household's food, shelter, and clothing expenses. In accordance with that philosophy, all members of the family contributed portions of their income to the family's shared OSU Visa account.[4]

## II.     National Home Education Research Institute (NHERI)

During the years at issue Mr. Ray worked at NHERI. NHERI is a tax-exempt section 501(c)(3) organization, cofounded by Mr. Ray to perform, analyze, and disseminate research on home schooling to the media, policymakers, and legislators. NHERI is primarily funded through donations but also generated revenue through book sales and research contracts.

## III.    Petitioners' and Petitioners' Children's Income-Producing Activities

### A.     Mr. Ray

During the years at issue Mr. Ray worked full time as NHERI's sole researcher and served as NHERI's sole financial officer. In his role as NHERI's

---

[4]OSU Credit Union treated its Visa accounts as depository accounts and allowed individual clients or customers to deposit checks or cash directly against an outstanding credit card account balance. Accordingly, we consider petitioners' OSU Visa account as a depository account and treat payments made to that account as deposits.

In addition to the OSU Visa account, petitioners had exclusive control over the MAPS savings account and a savings account at OSU Credit Union.

[*5] financial officer, Mr. Ray had the exclusive authority to determine wages and salaries for all of NHERI's workers, including himself.[5]  During the years at issue, however, NHERI did not pay Mr. Ray for his services, citing a lack of funds.

Independent of his work at NHERI, Mr. Ray earned income for his family by providing consulting services and giving speeches and expert testimony regarding home education (Schedule C receipts).  Mr. Ray deposited some of his Schedule C receipts into the OSU Visa account but typically cashed those he received in check form.  Petitioners reported Mr. Ray's Schedule C receipts as follows:

| | Year | | | | | |
|---|---|---|---|---|---|---|
| | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 |
| Gross receipts | $15,900 | $16,600 | $12,400 | $17,600 | $24,300 | $22,500 |
| Total expenses | -0- | -0- | -0- | -0- | -0- | 1,295 |
| Net profit | 15,900 | 16,600 | 12,400 | 17,600 | 24,300 | 21,205 |

Petitioners did not, however, report all of Mr. Ray's Schedule C receipts on their Schedules C for the years at issue.

_____

[5]NHERI did not have written employment contracts with its workers. Instead, Mr. Ray determined each worker's compensation on the basis of the amount of money that NHERI had available at the time it needed to pay its workers.

**[*6]**   B.   Ms. Ray

During the years at issue Ms. Ray generated income by making speeches at various home education retreats and seminars.  She was paid by check for some of those speaking engagements and deposited those payments into the OSU Visa account.  Petitioners did not report any of Ms. Ray's income for the years at issue.

C.   Petitioners' Children

During the years at issue five of petitioners' six children, Hanna R., Daniel R., C.R., E.R., and A.R., purportedly worked at NHERI as office assistants.  Their responsibilities ostensibly included answering telephone calls and emails, handling the mailing duties, and filling orders.  At no time, however, did their responsibilities include filling out timesheets or otherwise documenting their hours worked at NHERI because NHERI did not provide them with, nor require them to create, timesheets.

During the years at issue NHERI managed to pay petitioners' children a total of $260,120 for their work, despite NHERI's alleged inability to pay Mr. Ray for his services due to a lack of funds.  All payments to petitioners' children were

[*7] made by check (NHERI checks). Mr. Ray, on behalf of NHERI, signed and authorized those checks.[6]

Typically, petitioners' children would cash the NHERI checks at the bank where NHERI maintained its bank account. The children would then deposit some of that cash into the OSU Visa account and retain some of it.[7] The record does not establish the amounts retained by the children nor the amounts of the NHERI checks deposited into the OSU Visa account.

## IV. Petitioners' Tax Examination, Returns, and Notice of Deficiency

### A. Tax Examination

Petitioners did not timely file their Form 1040, U.S. Individual Income Tax Return (return), for any of the years at issue. On June 14, 2012, Internal Revenue Agent Kimberly Clonch (RA Clonch) started her examination concerning

---

[6]No Forms W-2, Wage and Tax Statement, or Forms 1099-MISC, Miscellaneous Income, were ever issued by NHERI, or Mr. Ray, for any of the amounts paid to petitioners' children or NHERI's other workers. Petitioners' children did not report any of the funds they received from NHERI on their respective returns.

[7]On occasion, petitioners' children would endorse some of the NHERI checks to Mr. Ray, who would then deposit the entirety of those checks in the OSU Visa account. In 2006 no NHERI checks were deposited into the OSU Visa account. In 2007 NHERI checks totaling $4,300 were deposited into the OSU Visa account. In 2008 NHERI checks totaling $900 NHERI were deposited in the OSU Visa account.

[*8] petitioners' Federal income tax liability for tax year 2010. On August 2, 2012, RA Clonch expanded that examination to include petitioners' Federal income tax liabilities for the other years at issue.

At about this time petitioners sought the assistance of their present counsel, James C. Pennington, to prepare their returns for the years at issue and later to represent petitioners during their examination with RA Clonch before respondent's Office of Appeals.[8] To assist Mr. Pennington in both his representation of petitioners and preparation of their returns for the years at issue, petitioners provided Mr. Pennington the following documents: (1) a table which purported to show estimates of Mr. Ray's Schedule C receipts for tax years 2006, 2007, 2008, 2009, and 2011, (2) a handwritten note that purported to show Mr. Ray's Schedule C receipts for tax year 2010, (3) a handwritten note that purported to show petitioners' property tax paid in tax year 2010, (4) a handwritten note that purported to show petitioners' medical expenses paid in tax year 2010, and (5) two documents from Santiam Escrow, Inc., showing that petitioners paid mortgage interest of $2,906.68 and $2,401.27 for tax year 2010. Petitioners did not

---

[8]Mr. Pennington, who is also a certified public accountant, did not provide petitioners with any tax advice before the respective due dates of those returns.

[*9] otherwise provide Mr. Pennington any substantive documentation to aid him in his preparation of their returns for the years at issue.

###### B.     Respondent's Reconstruction of Petitioners' Income

RA Clonch issued petitioners information document requests (IDR) for each of the years at issue.  In response to one of the IDRs, petitioners provided estimates of household expenses for two of their children.  Petitioners, however, did not provide all requested documents to RA Clonch.  As a result, RA Clonch summoned bank records for:  (1) petitioners' MAPS savings account, (2) petitioners' savings account at OSU Credit Union, (3) petitioners' OSU Visa account, and (4) NHERI's bank account, and she analyzed those bank records in order to complete her reconstruction of petitioners' income.[9]

###### 1.     Bank Deposits Analysis

RA Clonch examined every deposit into each of petitioners' bank accounts.  Then, using information provided by petitioners' IDR responses, RA Clonch

---

[9]The parties refer to this portion of RA Clonch's income reconstruction as her "bank deposits analysis".  For convenience we will adopt the parties' use of that term, but we recognize that RA Clonch's analysis was not fundamentally a "bank deposits analysis" of the type to which that term of art is typically applied.  To this extent and as discussed further infra, we recognize that RA Clonch's methods and analysis in reconstructing petitioners' income were generally reasonable and permissible.  See, e.g., Brodsky v. Commissioner, T.C. Memo. 2001-240, slip op. at 77-81.

[*10] attempted to ascertain whether any of those deposits were nontaxable or were previously taxed and adjusted her reconstruction of petitioners' income accordingly. In doing so, RA Clonch observed that many of the deposits into the OSU Visa account were of cash and were made by petitioners and their children.[10] RA Clonch concluded that the following taxable deposits were made in petitioners' accounts for each of the years at issue:

---

[10]For purposes of her analysis, RA Clonch considered petitioners' PayPal account to be a deposit account.

RA Clonch excluded from this portion of her income reconstruction analysis all NHERI checks that were deposited into the OSU Visa account, as she had already determined those checks to be income to petitioners elsewhere in her income reconstruction. At no time during the course of RA Clonch's examination of their bank accounts did petitioners inform RA Clonch that, on a number of occasions, they had deposited into their bank accounts the proceeds of NHERI checks cashed by their children. RA Clonch testified that had petitioners argued this position, she would have asked Mr. Pennington to provide her with contemporaneous records in support. Neither petitioners nor their children, however, kept contemporaneous records of the movement of cash among members of the household.

[*11]

| Year | Taxable deposit |
|------|-----------------|
| 2006 | $24,018.09 |
| 2007 | 23,236.55 |
| 2008 | 35,712.70 |
| 2009 | 52,381.33 |
| 2010 | 60,600.34 |
| 2011 | 61,935.53 |
| Total | 257,884.54 |

2.    NHERI Checks

After completing the bank deposits analysis, RA Clonch, using standard guidelines and information provided to her by petitioners, calculated petitioners' household expenses for each of the years at issue. She then compared that amount to her bank deposits analysis and determined that: (1) very few of the general housing living expenses were paid out of the OSU Visa account and (2) the cash from the NHERI checks was used, in large part, to pay petitioners' household expenses. Accordingly, as part of her reconstruction of petitioners' income, RA Clonch also included the NHERI checks in petitioners' taxable income for each of the years at issue.

[*12]        3.        Unreported Schedule C Income

After completing the bank deposits analysis and making her determination with respect to the NHERI checks, RA Clonch analyzed the amounts deposited into petitioners' accounts and compared those amounts to the amounts on petitioners' list of Schedule C receipts to determine the extent to which those receipts were actually deposited in petitioners' accounts.  In doing so, RA Clonch, using information from petitioners' IDR responses, determined the following amounts to be the extent to which petitioners deposited their Schedule C receipts into their various accounts:

| Year | Deposited Schedule C receipts |
| --- | --- |
| 2006 | $4,161.18 |
| 2007 | 5,102.00 |
| 2008 | 2,650.00 |
| 2009 | --- |
| 2010 | 1,134.15 |
| 2011 | 9,758.80 |
| Total | 22,806.13 |

As a result, RA Clonch included the following amounts as taxable deposits in her reconstruction of petitioners' income, in addition to those that she found as a result of her bank deposits analysis of petitioners' accounts:

**[*13]**

| Year | Unreported Schedule C receipts |
|------|-------------------------------|
| 2006 | $11,738.82 |
| 2007 | 11,498.00 |
| 2008 | 9,750.00 |
| 2009 | 17,600.00 |
| 2010 | 23,165.85 |
| 2011 | 11,441.20 |
| Total | 85,193.87 |

After adding up the taxable deposits, NHERI checks, and missing Schedule C receipts, RA Clonch subtracted the Schedule C income otherwise reported in petitioners' returns.

C.     Petitioners' Returns

On October 1, 2012, petitioners filed their 2010 return.  On December 31, 2012, they filed their 2006, 2007, 2008, and 2009 returns.  On August 15, 2013, they filed their 2011 return.

D.     Notice of Deficiency

On February 5, 2015, RA Clonch received written supervisory approval to impose an accuracy-related penalty under section 6662(a) for each of the years at issue.

**[\*14]** On July 6, 2015, respondent issued petitioners a notice of deficiency

(notice) for the years at issue, determining a deficiency arising from additional

unreported Schedule C income for each of the years at issue. In doing so

respondent relied on RA Clonch's reconstruction of petitioners' income.

Respondent further determined that for each of the years at issue petitioners are

liable for an addition to tax under section 6651(a)(1) and an accuracy-related

penalty under section 6662(a). Petitioners timely filed a petition for

redetermination.

OPINION

I.     Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed

correct, and the taxpayer bears the burden of proving that the determination is

improper. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).

However, if a taxpayer produces credible evidence[11] with respect to any factual

issue relevant to ascertaining the taxpayer's liability for any tax imposed by

subtitle A or B of the Code and satisfies the requirements of section 7491(a)(2),

---

[11]"Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness)." Higbee v. Commissioner, 116 T.C. 438, 442 (2001) (quoting H.R. Conf. Rept. No. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995).

**[*15]** the burden of proof on any such issue shifts to the Commissioner. Sec.

7491(a)(1). Section 7491(a)(2) requires a taxpayer to demonstrate that he or she

(1) complied with the requirements under the Code to substantiate any item, (2)

maintained all records required under the Code, and (3) cooperated with

reasonable requests by the Secretary[12] for witnesses, information, documents,

meetings, and interviews. See also Higbee v. Commissioner, 116 T.C. 438, 440-

441 (2001).

The U.S. Court of Appeals for the Ninth Circuit, to which an appeal in this

case would lie absent a stipulation to the contrary, see sec. 7482(b)(1)(A), (2), has

held that for the presumption of correctness to attach to the notice of deficiency in

unreported income cases, the Commissioner must establish some evidentiary

foundation connecting the taxpayer with the income-producing activity, see

Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), rev'g 67

T.C. 672 (1977), or demonstrating that the taxpayer actually received unreported

income, Edwards v. Commissioner, 680 F.2d 1268, 1270-1271 (9th Cir. 1982).

The requisite evidentiary foundation is minimal and need not include direct

---

[12]The term "Secretary" means the Secretary of the Treasury or his delegate. Sec. 7701(a)(11)(B).

[*16] evidence.  See Banister v. Commissioner, T.C. Memo. 2008-201, aff'd, 418 F. App'x 637 (9th Cir. 2011).

If the Commissioner introduces some evidence that the taxpayer received unreported income, the burden shifts to the taxpayer, who must establish by a preponderance of the evidence that the unreported income adjustment was arbitrary or erroneous.  See Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), aff'g T.C. Memo. 1997-97.

Respondent has established the necessary foundation linking petitioners with income-producing activities and with the bank accounts included in respondent's bank deposits analysis.  Therefore, the presumption of correctness stands, and petitioners bear the burden of proving that respondent's determinations are incorrect unless petitioners demonstrate that the burden of proof should shift to respondent under section 7491(a)(1) and (2).  Petitioners do not contend that they met the requirements, and the record confirms that they did not do so. Accordingly, the burden of proof remains on petitioners.

II.    Respondent's Reconstruction of Petitioners' Income

As noted above, respondent's reconstruction of petitioners' income consisted primarily of determining taxable deposits by way of RA Clonch's bank deposits analysis.  Respondent's entire reconstruction, however, also comprised

[*17] RA Clonch's determination that the NHERI checks constituted unreported income of petitioners.

Petitioners contend that respondent's reconstruction of their income is inaccurate because respondent: (1) improperly assigned the NHERI checks to petitioners as unreported income (i.e., assignment of income) and (2) improperly determined that certain bank deposits made by petitioners, their children, and third parties constituted unreported gross income of petitioners (i.e., the bank deposits analysis).

A.  Assignment of Income (NHERI Checks)

Section 61(a) defines gross income as "all income from whatever source derived". A fundamental principle of income taxation is that income is taxable to the person who earns it. Lucas v. Earl, 281 U.S. 111, 114-115 (1930). "The 'true earner' of income is the person or entity who controlled the earning of such income, rather than the person or entity who received the income." Barmes v. Commissioner, T.C. Memo. 2001-155, slip op. at 78, aff'd, 89 A.F.T.R.2d (RIA) 2002-2249 (7th Cir. 2002). "The crucial question * * * [is] whether the assignor retains sufficient power and control over the assigned property or over the receipt of the income to make it reasonable to treat him as the recipient of the income for tax purposes." Id. (quoting Commissioner v. Sunnen, 333 U.S. 591, 604 (1948)).

**[*18]** Petitioners contend that respondent erred in including the NHERI checks in petitioners' income in his reconstruction for the years at issue because with respect to petitioners': (1) adult children, there is "clear evidence that the children had dominion and control over the amounts paid to them by NHERI" and (2) minor children, "section 73(a) requires that the amounts [paid to them by NHERI] must not be included in * * * [petitioners'] gross income." Petitioners further contend that if this Court finds that respondent did not err in assigning the NHERI checks as income to petitioners in his reconstruction of petitioners' income for the tax years at issue, then petitioners are nonetheless entitled to a deduction for the amounts their children received.

Respondent, however, contends that he did not err in including the NHERI checks as income to petitioners in his reconstruction of petitioners' income for the tax years at issue because: (1) by purporting to pay five of his six children, instead of himself, Mr. Ray attempted to disguise petitioners' receipt of over $260,120 during the years at issue; (2) petitioners exercised complete dominion and control over the bank accounts, including the OSU Visa account, into which petitioners and their children deposited cash from the NHERI checks; and (3) petitioners' children would regularly endorse NHERI checks to Mr. Ray, who then either

[*19] deposited the checks into petitioners' bank account or cashed them and used that cash to pay petitioners' household expenses.  We agree with respondent.

First, during the years at issue Mr. Ray worked full time at NHERI as its sole researcher and financial officer.  As NHERI's financial officer, Mr. Ray had the exclusive authority to determine wages and salaries for all of NHERI's workers, including himself.  Yet during those years NHERI, citing a lack of funds, did not pay Mr. Ray for his services in those aforementioned roles but did manage to pay petitioners' children $260,120 for their purported work as office assistants during that same period.[13]  We also note that at no time were any of those payments reported to the Internal Revenue Service on Forms W-2, 1099, or any other return.  Nor did Mr. Ray inform his children that they might be required to file returns for the years at issue.

Moreover, petitioners' children would then cash those NHERI checks at the bank where NHERI maintained its bank account.  The children would deposit some of that cash into the OSU Visa account and retain some of it.[14]  The record does not establish what petitioners' children did with the cash they retained, nor

---

[13]The record does not establish how many hours petitioners' children ostensibly worked because NHERI did not provide them with, nor require them to create, timesheets.

[14]See supra note 7.

[*20] does the record establish the extent to which petitioners' children actually deposited the cash proceeds from the NHERI checks into the OSU Visa account because neither petitioners nor their children maintained a contemporaneous ledger or other account book that might establish the source or ownership of the cash deposited into the family OSU Visa account. Nevertheless, the record does establish that the cash from the NHERI checks was used to pay petitioners' household expenses.

Finally, since we have found that respondent did not err in assigning the NHERI checks as income to petitioners, we must address petitioners' contention with respect to section 73(a). We find petitioners' contention to be without merit. This is because while section 73(a) requires inclusion of "[a]mounts received in respect of the services of a child" in the child's own gross income rather than that of the parents, it applies only to income the child is deemed to have earned. Fritschle v. Commissioner, 79 T.C. 152, 157-158 (1982).[15] To determine the true earner, we looked to who had the "ultimate direction and control over the earning"

---

[15]Before the enactment of the predecessor of sec. 73, income received in respect of the services of a child was reported by parents who held rights to such services under local law. H.R. Rept. No. 78-1365, at 21 (1944), 1944 C.B. 821, 876-877. However, States had varying laws and exceptions concerning parental entitlement to the services of a child. Id. Congress sought to create uniformity by requiring inclusion of amounts received for a child's services in the child's own gross income. Id.

[*21] of the income. <u>Vercio v. Commissioner</u>, 73 T.C. 1246, 1254 (1980)

(quoting <u>Nesenberg v. Commissioner</u>, 69 T.C. 1005, 1010-1011(1978)); <u>see</u>

<u>Fritschle v. Commissioner</u>, 79 T.C. at 158.  As we noted above, we determined the

"true earner" of the income to be petitioners, not their children.  Therefore, section

73(a) is inapplicable and does not operate to include any portion of those amounts

in the gross incomes of petitioners' children.[16]

Accordingly, on the record before us, we find that respondent properly

included the NHERI checks in petitioners' income in his reconstruction for the tax

years at issue.

B.    <u>Bank Deposits Analysis</u>

As stated above, gross income includes "all income from whatever source

derived", including income derived from business.  Sec. 61(a)(2).  A taxpayer

---

[16]On brief petitioners claim that if this Court finds that respondent properly
included the NHERI checks in their income for the tax years at issue, then they
"would be entitled to any ordinary and necessary business expenses related to such
self-employment income" with respect to cash retained by their children from the
NHERI checks.  Petitioners fail to cite any statutory authority or caselaw but assert
that given such a finding, they "would then be in the position of being taxed on
certain amounts now as independent contractors of NHERI."
    To the extent we understand petitioners' contention, we find it to be without
merit.  To the extent petitioners' children may have retained any money from the
NHERI checks, the record lacks any evidence to establish that these amounts were
deductible business expenses of petitioners, rather than nondeductible, personal,
parenting expenses.  <u>See</u> <u>Romine v. Commissioner</u>, 25 T.C. 859, 877 (1956).

[*22] must maintain books and records establishing the amount of his or her gross income. See sec. 6001; Petzoldt v. Commissioner, 92 T.C. 661, 686 (1989); sec. 1.446-1(a)(4), Income Tax Regs. When a taxpayer fails to keep adequate books and records, the Commissioner is authorized to determine the existence and amount of the taxpayer's income by any method that clearly reflects income. Sec. 446(b); Petzoldt v. Commissioner, 92 T.C. at 693. The Commissioner may use indirect methods, and he has latitude in determining which method of reconstruction to apply when a taxpayer fails to maintain adequate books and records. Petzoldt v. Commissioner, 92 T.C. at 693. The Commissioner's reconstruction of a taxpayer's income need only be reasonable in the light of all surrounding facts and circumstances. Schroeder v. Commissioner, 40 T.C. 30, 33 (1963); see also Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970). The method of reconstruction that the Commissioner uses is not invalidated solely because the Commissioner's income determination may not be completely correct. Halle v. Commissioner, 175 F.2d 500, 502-503 (2d Cir. 1949), aff'g 7 T.C. 245 (1946); DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).

Respondent used the bank deposits method because petitioners failed to maintain or produce for examination adequate books and records for the tax years

[*23] at issue.  A bank deposit is prima facie evidence of income.  DiLeo v. Commissioner, 96 T.C. at 868; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).  The bank deposits method of reconstruction assumes that all of the money deposited into a taxpayer's account is taxable income unless the taxpayer can show that the deposits are nontaxable.  See DiLeo v. Commissioner, 96 T.C. at 868; see also Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964).  The Commissioner need not show a likely source of the income when using the bank deposits method, but the Commissioner must take into account any nontaxable items or deductible expenses of which the Commissioner has knowledge.  See Price, 335 F.2d at 677; Tokarski v. Commissioner, 87 T.C. at 77.  To this extent, however, the Commissioner is not obligated to follow any "leads" that suggest a taxpayer has deductible expenses.  DiLeo v. Commissioner, 96 T.C. at 872.

When the Commissioner reconstructs a taxpayer's income using the bank deposits method and determines a deficiency, the taxpayer bears the burden of proving the Commissioner's analysis and determinations are erroneous.  See Clayton v. Commissioner, 102 T.C. 632, 645 (1994); DiLeo v. Commissioner, 96 T.C. at 883.  The taxpayer may prove that the Commissioner's reconstruction of income is in error, in whole or in part, by proving that a deposit is nontaxable.  See Clayton v. Commissioner, 102 T.C. at 645.

[*24] Petitioners did not produce all books and records requested during audit. RA Clonch subsequently needed to summon bank records directly from (1) petitioners' MAPS savings account, (2) a savings account at OSU Credit Union, (3) the OSU Visa account, and (4) NHERI's bank account, in order to accurately determine petitioners' income for the years at issue. From these records, RA Clonch prepared the bank deposits analysis upon which respondent's determinations of income tax deficiencies are partly based.

Petitioners contend that RA Clonch's bank deposits analysis is inaccurate because RA Clonch erred in determining: (1) that certain reimbursements, transfers between accounts, and gifts were taxable deposits and (2) that certain cash deposits were double counted. Because petitioners bear the burden of proving that respondent's bank deposits analysis is erroneous, they must prove that respondent erred in preparing it. See sec. 446(b); Petzoldt v. Commissioner, 92 T.C. at 693; sec. 1.446-1(b)(1), Income Tax Regs.

We address each of petitioners' contentions in turn. As discussed below, we generally find that RA Clonch's methodology for determining petitioners' taxable income and the resulting income tax deficiencies was reasonable.

**[\*25]**     1.     <u>Reimbursements, Transfers Between Accounts, and Gifts</u>

Petitioners contend that the bank deposits analysis is inaccurate because RA Clonch erred in determining that certain reimbursements, transfers between, accounts, and gifts were taxable deposits. Respondent contends that petitioners failed to identify any nontaxable deposits during the examination and that respondent eliminated nontaxable sources of income and transfers between accounts based on available information.

At trial Mr. Ray conceded that petitioners failed to report all of their Schedule C income in their untimely filed returns.[17] Further at trial, Mr. Ray testified, without providing any corroborating evidence, that many of the disputed items were in fact reimbursements, gifts, income of another, or transfers between accounts. We find Mr. Ray lacked credibility and decline to rely on his uncorroborated and self-serving testimony to establish that the disputed items

---

[17]To the extent any of petitioners' arguments can be construed to contend that respondent erred in including petitioners' missing Schedule C income in his reconstruction of petitioners' income, we find such a contention to be without merit. In calculating petitioners' missing Schedule C income, RA Clonch calculated the difference between the amounts that petitioners reported on their respective Schedules C for the years at issue and the deposits she could identify as being Schedule C income on the basis of documents petitioners provided to her during the examination. Petitioners have failed to provide any evidentiary support to establish that RA Clonch erred in preparing this portion of the bank deposits analysis.

[*26] were reimbursements, gifts, income of another, or transfers between accounts. See Tokarski v. Commissioner, 87 T.C. at 77.

On the record before us, we find that petitioners failed to introduce credible evidence that the aforementioned deposits are not taxable income, and to that extent we find that no adjustment to respondent's bank deposits analysis is required.

### 1. Cash Deposits

Petitioners also contend that respondent's bank deposits analysis is inaccurate because it fails to properly account for certain cash deposits. Specifically, petitioners contend that, in the light of our holding above that the NHERI checks constitute income to petitioners for the years at issue, inclusion of those cash deposits resulted in the double counting because petitioners allege that the cash deposits into the OSU Visa account came from cashed NHERI checks.

Although Mr. Ray did not support his testimony with evidence of any worth and did not even make the argument about "double counting" until after the audit, in which petitioners were not particularly cooperative, it is logical that some of the checks made out to the children from NHERI were deposited into the OSU Visa account. To that extent, we find that respondent's bank deposits analysis would have double counted at least some portion of petitioners' taxable income for each

[*27] of the years at issue. The conundrum is how to determine what portions of the NHERI checks were actually deposited into the OSU Visa account given the shortcomings of the evidence at trial.[18] Because we believe that petitioners engaged in a pattern of behavior to replace what ordinarily would be taxable salary payments to Mr. Ray with what petitioners argue are nontaxable payments to their children, the Court believes that the deposits into the OSU Visa account most likely to be the subject of this sleight of hand were those deposits which were evenly divisible by 100 and not otherwise the subject of a stipulation by one or both parties.[19] We make a further refinement to this calculation for tax year 2010

---

[18]The record does not establish what petitioners' children did with the cash they retained, nor does it establish the extent to which petitioners or their children actually deposited the cash proceeds from the NHERI checks into the OSU Visa account as neither petitioners nor their children maintained a contemporaneous ledger or other account book that established the source or ownership of such cash.

[19]Using our best judgment, we conclude that some of the cash deposits were in fact cash from the NHERI checks that has already been counted against petitioners as income for the years at issue. See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Buske v. Commissioner, T.C. Memo. 1998-29 (applying Cohan to determine the amount of unreported income); Kale v. Commissioner, T.C. Memo. 1996-197 (same); Alanis v. Commissioner, T.C. Memo. 1995-263 (holding that in cases of unreported income it may be appropriate for the Court to make estimates of the amount of income that the taxpayer has failed to report, applying the Cohan principle); Smith v. Commissioner, T.C. Memo. 1993-548 (applying Cohan to adjust both bank deposits and nontaxable items in reconstructing income). The appendix infra pp. 33-35 details which deposits were

(continued...)

[*28] when we employ the lesser of the sum of such deposits and the total amount of checks made out that year from NHERI to petitioners' children.

Accordingly, on the record before us, we find that $6,200 for 2006, $4,000 for 2007, $17,000 for 2008, $42,500 for 2009, $48,000 for 2010, and $29,800 for 2011 must be excluded in calculating petitioners' alleged unreported Schedule C income.

## III.    Penalties and Additions to Tax

### A.    General

The Commissioner bears the burden of production with respect to the taxpayers' liability for penalties and additions to tax and must produce sufficient evidence indicating that it is appropriate to impose them. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446. As part of that burden, with respect to certain penalties, the Commissioner must also show that he complied with the written approval requirement of section 6751(b)(1). See Graev v. Commissioner, 149 T.C. 23 (2017), supplementing and overruling in part 147 T.C. 460 (2016).[20]

_____

[19](...continued)
actually cash from the NHERI checks.

[20]Sec. 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment" receives supervisory approval. This provision does not apply to "any addition to tax under section

(continued...)

**[\*29]** Once the burden of production is met, the taxpayers must come forward with persuasive evidence that the Commissioner's determination is incorrect or that the taxpayers had reasonable cause or substantial authority for their position. See Higbee v. Commissioner, 116 T.C. at 446-447.

    B.    Section 6651:  Addition to Tax for Failure To File Timely

Section 6651(a)(1) imposes upon taxpayers an addition to tax for failure to file a timely return.  The addition to tax will not apply if the taxpayers show their failure was due to reasonable cause, not willful neglect.  Id.  Taxpayers demonstrate reasonable cause when they show that, despite exercising ordinary business care and prudence, they were unable to file the return on time.  Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  The obligation to file timely is the taxpayers', unambiguous and nondelegable, and reliance on an agent generally will not amount to reasonable cause for untimely filing.  United States v. Boyle, 469 U.S. 241, 249-252 (1985).  Taxpayers bear a heavy burden when attempting to prove reasonable cause for failure to file timely.  Id. at 245; see Boles Trucking, Inc. v. United States, 77 F.3d 236, 241 (8th Cir. 1996).

---

[20](...continued)
6651, 6654, or 6655".  Sec. 6751(b)(2).  Accordingly, respondent was not required to verify that the additions to tax determined against petitioners for the years at issue under sec. 6651(a)(1) had been approved by a supervisor.

**[\*30]** Petitioners failed to file timely returns for the years at issue. Petitioners argue, however, that they had reasonable cause because they were unaware of their filing requirement for the years at issue and therefore "their failure to timely file was neither conscious nor intentional." Petitioners' mistake as to or ignorance of the law does not amount to reasonable cause and thus will not relieve them from the imposition of the addition to tax pursuant to section 6651(a)(1). Rayhill v. Commissioner, T.C. Memo. 2013-181 (citing Joyce v. Commissioner, 25 T.C. 13, 15 (1955), and West v. Commissioner, T.C. Memo. 2011-272).

On the record before us, we find that petitioners have failed to carry their burden of establishing that their failure to timely file returns for the years at issue was due to reasonable cause and not due to willful neglect. On that record, we sustain respondent's imposition of the addition to tax under section 6651(a)(1).

C.      Section 6662(a):  Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty on any portion of an underpayment of tax that is attributable to the taxpayers' "[n]egligence or disregard of rules or regulations" or "substantial understatement of income tax". Negligence includes "any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Sec. 1.6662-3(b), Income Tax Regs. An understatement of income tax is substantial if the amount of the

[*31] understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

On the record before us, we find that if the Rule 155 computations confirm substantial understatements of income tax for the years at issue, then respondent has met his burden of production.[21] Further, we find that petitioners were required, but failed, to maintain adequate records to substantiate their deductions. Sec. 1.6662-3(b), Income Tax Regs. On that record, we find that respondent has also met his burden of production with respect to the accuracy-related penalties under section 6662(a) attributable to petitioners' negligence.

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, that portion. Sec. 6664(c)(1). The determination of whether the taxpayer acted with reasonable cause and in good faith depends on all the pertinent facts and circumstances, including the taxpayer's efforts to assess the taxpayer's proper tax liability, the knowledge and

---

[21]We note that the record contains evidence, in the form of a civil penalty approval form, that respondent complied with the requirements of sec. 6751(b)(1). See Graev v. Commissioner, 149 T.C. __, __ (slip op. at 14) (Dec. 20, 2017), supplementing and overruling in part 147 T.C. 460 (2016).

**[*32]** experience of the taxpayer, and the reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs.

On the record before us, we find that petitioners have failed to carry their burden of establishing that there was reasonable cause for, and that they acted in good faith with respect to, the underpayments for the years at issue. On that record, we find that petitioners have failed to carry their burden of establishing that they are not liable for the years at issue for the accuracy-related penalties because of underpayments attributable to negligence, or alternatively, substantial understatements of income tax, under section 6662(a) and (b)(1) and (2).

We have considered all the other arguments of the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

**[*33]**                                                      APPENDIX

| 2006 | | 2007 | | 2008 | | 2009 | | 2010 | | 2011 | |
|------|------|------|------|------|------|------|------|------|------|------|------|
| Date | Amt | Date | Amt | Date | Amt | Date | Amt | Date | Amt | Date | Amt |
| 3/29 | $400 | 4/25 | $800 | 1/2 | $500 | 1/8 | $1,400 | 1/4 | $1,400 | 1/11 | $100 |
| 5/23 | 900 | 9/4 | 1,600 | 2/19 | 1,000 | 1/28 | 900 | 1/11 | 1,700 | 1/12 | 1,000 |
| 6/15 | 100 | 11/14 | 300 | 3/6 | 100 | 2/9 | 1,000 | 1/19 | 2,000 | 1/20 | 3,000 |
| 6/20 | 500 | 12/11 | 1,300 | 3/11 | 200 | 3/3 | 400 | 1/20 | 1,000 | 1/31 | 1,400 |
| 7/7 | 200 | | | 3/18 | 1,000 | 3/25 | 1,000 | 1/25 | 500 | 2/1 | 100 |
| 8/9 | 300 | | | 4/15 | 200 | 3/30 | 2,900 | 1/28 | 2,000 | 2/10 | 1,200 |
| 8/18 | 200 | | | 4/17 | 500 | 4/20 | 500 | 2/1 | 1,100 | 2/11 | 1,300 |
| 10/16 | 100 | | | 4/22 | 500 | 4/27 | 1,500 | 2/26 | 500 | 2/24 | 1,700 |
| 12/8 | 1,600 | | | 4/29 | 100 | 5/4 | 1,000 | 3/1 | 1,600 | 3/3 | 1,000 |
| 12/12 | 300 | | | 5/9 | 100 | 5/12 | 1,600 | 3/9 | 1,700 | 3/10 | 400 |
| 12/20 | 1,600 | | | 5/13 | 800 | 5/22 | 700 | 3/24 | 900 | 3/18 | 500 |
| | | | | 5/13 | 100 | 5/28 | 900 | 4/2 | 500 | 3/22 | 400 |
| | | | | 5/20 | 200 | 6/1 | 600 | 4/13 | 1,400 | 4/18 | 200 |
| | | | | 7/22 | 100 | 6/2 | 1,300 | 4/15 | 900 | 5/12 | 300 |

| [*34] 2006 | | 2007 | | 2008 | | 2009 | | 2010 | | 2011 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | Amt | Date | Amt | Date | Amt | Date | Amt | Date | Amt | Date | Amt |
| | | | | 7/23 | 200 | 6/9 | 900 | 4/21 | 900 | 5/13 | 900 |
| | | | | 7/28 | 1,400 | 6/10 | 500 | 5/5 | 700 | 5/25 | 1,000 |
| | | | | 8/5 | 1,200 | 6/11 | 800 | 5/6 | 2,100 | 6/17 | 3,500 |
| | | | | 8/26 | 1,900 | 6/17 | 800 | 5/10 | 400 | 6/27 | 2,500 |
| | | | | 9/15 | 600 | 6/22 | 300 | 5/21 | 4,400 | 7/21 | 200 |
| | | | | 9/22 | 300 | 7/6 | 1,000 | 5/25 | 200 | 8/26 | 700 |
| | | | | 9/24 | 600 | 7/10 | 800 | 6/28 | 1,100 | 8/30 | 300 |
| | | | | 9/30 | 800 | 7/17 | 2,800 | 7/9 | 1,100 | 9/1 | 1,000 |
| | | | | 10/1 | 200 | 7/27 | 1,200 | 7/16 | 2,000 | 9/16 | 1,300 |
| | | | | 10/6 | 200 | 8/3 | 1,000 | 7/22 | 500 | 10/5 | 700 |
| | | | | 10/14 | 1,400 | 8/4 | 2,000 | 8/3 | 500 | 11/28 | 1,200 |
| | | | | 11/21 | 100 | 8/18 | 2,500 | 8/6 | 500 | 11/29 | 500 |
| | | | | 11/28 | 200 | 8/19 | 300 | 8/9 | 6,000 | 12/2 | 500 |
| | | | | 12/8 | 1,400 | 8/20 | 300 | 8/18 | 1,000 | 12/9 | 900 |
| | | | | 12/10 | 300 | 9/8 | 1,500 | 9/17 | 1,500 | 12/15 | 2,000 |

| [*35] 2006 | | 2007 | | 2008 | | 2009 | | 2010 | | 2011 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | Amt | Date | Amt | Date | Amt | Date | Amt | Date | Amt | Date | Amt |
| | | | | 12/29 | 800 | 9/30 | 900 | 9/27 | 1,000 | | |
| | | | | | | 10/1 | 700 | 10/11 | 300 | | |
| | | | | | | 10/7 | 1,000 | 10/14 | 2,000 | | |
| | | | | | | 10/14 | 600 | 10/18 | 700 | | |
| | | | | | | 10/19 | 1,500 | 10/25 | 500 | | |
| | | | | | | 10/30 | 1,200 | 12/2 | 600 | | |
| | | | | | | 11/9 | 1,000 | 12/2 | 700 | | |
| | | | | | | 11/18 | 1,400 | 12/8 | 100 | | |
| | | | | | | 11/24 | 700 | 12/13 | 800 | | |
| | | | | | | 12/11 | 300 | 12/27 | 1,200 | | |
| | | | | | | 12/14 | 500 | | | | |
| | | | | | | 12/28 | 300 | | | | |
| | | | | | | | | | | | |
| Total | 6,200 | Total | 4,000 | Total | 17,000 | Total | 42,500 | Total | 48,000 | Total | 29,800 |